UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBIN MCBROOM,

    Plaintiff,

v.                                    Case No. 8:19-cv-1489-T-SPF

ANDREW M. SAUL,
Commissioner of the Social
Security Administration,

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for supplemental security income benefits ("SSI"), disability insurance benefits ("DIB"), and period of disability benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    **I.**    **Procedural Background**

Plaintiff filed applications for a period of disability, DIB, and SSI (Tr. 317-320, 321-326). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 158-160, 161-163, 166-170, 171-175). Plaintiff then requested an administrative hearing (Tr. 176-177). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 47-79). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 18-38). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 293-296, 7-14). Plaintiff then timely filed

a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 1982, claimed disability beginning January 15, 2015 (Tr. 82, 96). Plaintiff obtained at least a high school education (Tr. 90, 382). Plaintiff has past relevant work experience as a patient care assistant; and other additional past jobs as a fry cook, a gas station attendant, and a busser (Tr. 93-94, 383). Plaintiff alleged disability due to anxiety, depression, black outs, cardiac condition, and syncope (Tr. 82-83, 96-97). She added skin cancer as a new medical condition in 2015 (Tr. 430). At the administrative hearing, she alleged disability due to schizoaffective disorder, migraine headaches, and problems with her left thumb and left dorsal compartment too (Tr. 61-65).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through March 31, 2017, and had not engaged in substantial gainful activity since January 15, 2015, the alleged onset date (Tr. 21). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: tendonitis of the left hand and trigger fingers; status post release; lumbago; asthma; vertigo/ syncope unspecified type; depressive disorder; anxiety disorder; post-traumatic stress disorder (PTSD); and cannabis abuse (Tr. 21). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light

exertion work; frequently grasp/ finger/ feel with left upper extremity; occasionally climb ramps/ stairs; never climb ladders/ ropes/scaffolds; no work around extremes of heat/ cold, respiratory irritants, and hazards, such as open moving machinery and unprotected heights. She can understand/ remember/ carry out simple instructions and maintain persistence to perform simple tasks (Tr. 26). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 26).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 36). Given Plaintiff's background and RFC, the vocational expert ("VE") testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as ticket taker, mail clerk, and survey worker (Tr. 37). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 37-38).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. § 404.1520(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV.   Analysis**

Plaintiff argues here that the ALJ erred by (1) failing to provide substantial evidence to support his RFC assessment and hypothetical to the VE; (2) failing to properly consider her subjective complaints; and (3) failing to order a psychological consultative examination. For the reasons that follow, this Court concludes that the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A. RFC

The Court first considers whether the ALJ erred in formulating his RFC and hypothetical to the VE. In objecting to the RFC, Plaintiff does not challenge the weight assigned to her treating providers head-on, but she suggests that the ALJ erred by finding her capable of using her left hand "frequently" to grasp/finger/feel and by failing account for the limitations related to her severe anxiety disorder. She asserts that the ALJ should have considered medical records from her hand specialist Dr. Scott Gargasz and her physical/occupational therapists that show she has greater limitations of her left wrist, thumb, and fingers. As to her mental health impairments, Plaintiff complains that the ALJ's limitation to "simple instructions and maintain persistence to perform simple tasks" does not comprehensively describe the extent and severity of her anxiety disorder.

Under the statutory and regulatory scheme, a claimant's RFC is a formulation ultimately reserved for the ALJ, not a treating provider or a State Agency physician or psychologist. Limitations in the RFC must be supported in the record, however, the ALJ's RFC findings need not mirror or match a treating provider's opinions (after all, the responsibility for assessing the RFC rests with the ALJ). *See Bloodsworth*, 703 F.2d at 1239. In reaching his RFC, the ALJ's decision reflects that he considered the medical evidence as a whole. In particular, he discussed Plaintiff's left hand condition including Dr. Gargasz's office notes, Tampa General Hospital Hand Clinic occupational therapy treatment notes, and records related to her surgical interventions and injection treatments (Tr. 29-30). The ALJ stated that Dr. Gargasz's records indicate "work status full duty/ activity" in both April 2017 and December 2017. The ALJ also discussed that on

December 27, 2017, the last visit with Dr. Gargasz included in the administrative record, Plaintiff reported no longer having pain in the left dorsum hand/ wrist or left thumb, reported pain in her left middle and ring fingers, and denied tingling and numbness (Tr. 30). Dr. Gargasz's plan for the future included further occupational therapy and trigger finger release to the left middle finger and left ring finger (R. 30). The ALJ discussed Plaintiff's testimony at the administrative hearing that she underwent left hand surgery in January 2018 (Tr. 30). In light of the medical evidence and testimony, the ALJ assigned only "medium weight" to Dr. Gargasz's opinion. The ALJ explained, "Although Dr. Gargasz is a treating specialist and had supporting unremarkable exams on that visit, he did not define specific work-related activities/ functional capacity involved in the term 'full duty/ activity'" (Tr. 30).

Relatedly, Plaintiff claims the ALJ should have discussed the fact that she wore a splint and cast. She posits that "[a]n individual wearing a wrist splint, a spica thumb splint and/or a cast would be unable to have the mobility to use that particular hand, wrist, thumb and fingers on a frequent basis" (Doc. 30, 28). As the Commissioner points out, however, the record evidence shows that Plaintiff's cast was removeable (Tr. 1126, 1316) and that she could wear the splint nightly, during activity, or at all times except while bathing (Tr. 1151, 1156, 1163, 1168). Thus, there is no evidence that Plaintiff was required to wear the splint while performing work-related activities. In fact, as the ALJ noted, Plaintiff testified that surgery was beneficial, and that her only functional concern was not being able to fully extend her left ring finger (Tr. 64-65). The ALJ noted that the record shows she engaged in a wide range of activities including independent personal care,

7

preparing light meals, doing some cleaning and laundry, and washing, feeding, watering and caring for her dog (Tr. 62, 70).

Plaintiff similarly asserts the ALJ erred in crafting his RFC by failing to consider the mental health treatment notes of the nurse practitioner who treated her at Gracepoint, ARNP Seignon. Plaintiff recognizes that at the time of the ALJ's decision, the regulations defined a nurse practitioner as a non-acceptable medical source or "other source" rather than an "acceptable medical source," but argues nonetheless that her opinions are probative of the severity of her anxiety, depression, PTSD, and schizoaffective disorder. An ALJ's decision must reflect that he has considered the medical evidence as a whole and that substantial evidence supports his conclusions. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citing *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995). Although an ALJ is not required to accept the opinion of an individual who is not listed as an "acceptable medical source," information from other sources, such as nurse practitioners, "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-3p, 2006 WL 2329939, *3-4 (2006).

In reviewing the ALJ's decision, I find the ALJ properly considered ARNP Seignon's records, and discussed thoroughly Plaintiff's treatment at Gracepoint, specifically discussing Seignon's assessments of Plaintiff and noting that at the time she was not considered an acceptable medical source for the purpose of diagnosis (Tr. 34). He noted Plaintiff's "serious anxiety issues in public and with doctors," her bouts with depression, her schizoaffective disorder, and PTSD (Tr. 33-34). The ALJ discussed Seignon's evaluations and evaluations by other providers at Gracepoint and Tampa

8

Family Health Center, as well as the consultative evaluation by Thomas Trimmer, Ph.D. and the state agency psychological consultants, Pamela Green and Dana Deboskey (Tr. 33-35). In support of the RFC, the ALJ explained:

> In regard to her mental state, her record reflects a number of diagnoses, many not particularly consistent with one another. She maintains an independent lifestyle with multiple friends and family members, and generally follows medical recommendations. She denies side effects of psychotropic medication. Exams repeatedly show some depressed mood but good eye contact and hygiene, normal thought content and speech, and intact insight and judgment, without suicidal or homicidal ideation and no hallucinations. In general, the underlying mental issues appear to have been adequately considered and accounted for with the limitation to no more than simple instructions and simple tasks.

(Tr. 36).

Looking at the ALJ's decision against the administrative record, this Court concludes that the ALJ properly considered all of the evidence, weighed the opinion evidence, and provided good reasons for discounting opinions that he did not adopt as required by the regulations. In support of his RFC finding, the ALJ considered all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on 20 C.F.R. §§ 404.1529, 416.929 and SSR 16-3p. He also considered the opinion evidence as required by 20 C.F.R. §§ 404.1527, 416.927 and evaluated Plaintiff's subjective complaints as required by the Eleventh Circuit's pain standard. He discussed Plaintiff's testimony and considered her statement that she has ongoing issues holding onto objects with her left hand, and concluded that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent

with the medical evidence and other evidence in the record for the reasons explained in this decision" (Tr. 27).

Ultimately, under the statutory and regulatory scheme, a claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence. *See* 20 C.F.R. § 404.1546(c). Based on the substantial evidence the ALJ summarized, the ALJ restricted Plaintiff to light work, with a limitation to frequent grasp/finger/feel with her left hand and ability to understand/ remember/ carry out simple instructions and maintain persistence to perform simple tasks (Tr. 26). The task of this Court is simply to determine whether substantial evidence supports the ALJ's decision, not to substitute its judgment for that of the Commissioner. To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, this Court cannot. Where, as here, the ALJ's findings are based on the correct legal standards and are supported by substantial evidence, the Commissioner's decision must be affirmed even if this Court would have reached a different conclusion. *Bloodsworth, supra*, 703 F.2d at 1239.

### B. Subjective Complaints

In a separate argument, Plaintiff maintains that the ALJ erred by failing to properly consider her subjective complaints. Specifically, she asserts that the ALJ failed to consider the longitudinal record of her mental health problems, the severity of her POTS diagnosis that caused syncopal episodes and dizziness, and her severe left hand impairment. Plaintiff's second argument is intertwined with her first argument, as the ALJ is tasked with considering a claimant's subjective complaints when formulating the RFC. *See* 20

10

C.F.R §§ 404.1529(a), (b); 416.929(a), (b). As the Commissioner notes, Plaintiff's cardiologist ultimately diagnosed Plaintiff with bradycardia rather than POTS, and noted that the six months monitoring of the implantable loop recorder showed no new episodes of bradycardia and only a single episode of a three-second pause while she was sleeping and no syncope (Tr. 1323). The ALJ properly considered Plaintiff's subjective symptoms as required by the applicable regulations, finding Plaintiff's conditions not as limiting as she alleged (Tr. 26). Plaintiff has failed to show that her impairments caused limitations on her ability to work beyond the limitations found by the ALJ.

### C. Consultative Examination

Lastly, Plaintiff maintains the ALJ erred by failing to order a consultative psychological examination. She correctly asserts that the ALJ has a basic obligation to develop a full and fair record before reaching a disability determination. *Ellison v. Banhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). However, when the administrative record contains sufficient evidence for the ALJ to make an informed decision, a consultative examination is not required. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (regulations normally require a consultative examination only when necessary information is not in the record and cannot be obtained from claimant's treating medical sources or other medical sources).[1]

---

[1] A non-exhaustive list of situations requiring a consultative examination appears at 20 C.F.R. § 404.1519a(b) and includes situations where (1) the additional evidence needed is not contained in the records of claimant's medical sources; (2) the evidence that may have been available from claimant's treating or other medical sources cannot be obtained for reasons beyond claimant's control, such as death or non-cooperation of a medical source; (3) highly technical or specialized medical evidence that the Commissioner needs is not available from claimant's treating or other medical sources;

Moreover, Plaintiff bears the burden of proving disability, and is responsible for producing evidence to support her claim. *Ellison, supra*, at 1276. Plaintiff has not pointed to evidentiary gaps that resulted in unfairness or clear prejudice. Rather, buttressing her assertion that a consultative examination was needed, Plaintiff asserts the ALJ indicated that the consultative psychologist Trimmer stopped short of providing specific work-related limitations and "reject[ed] all of [her] mental health records from Gracepoint" (Doc. 30, p.43); leaving only the non-examining state agency psychologists' opinions which alone do not constitute substantial evidence. She asserts that the ALJ was left "without any reliable opinion evidence on which to make an informed mental residual capacity determination" and had a duty to order an updated psychological evaluation (Doc. 30, p 44). To the contrary, I find the administrative record contains ample evidence concerning Plaintiff's mental health for the ALJ to reach an informed decision. *Ingram, supra.* The claimant bears the burden of proving disability and is responsible for providing evidence to support her claim. No evidentiary gaps are identified. As to Plaintiff's conclusion that the ALJ lacked evidence from which to form his RFC, this Court finds this argument flawed because the ALJ is not required to base his RFC finding on a medical source opinion. Rather, as stated previously, under the statutory and regulatory scheme, a claimant's RFC is a formulation reserved for the ALJ, who must support his findings

---

or (4) there is an indication of a change in claimant's condition that is likely to affect claimant's ability to work, but the current severity of claimant's impairment is not established. 20 C.F.R. § 404.1519a(b)(1)-(4).

with substantial evidence. *See* 20 C.F.R. § 404.1546(c). The ALJ did so in this case. Therefore, the ALJ in this case did not need to further develop the record.

**V.     Conclusion**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on this 3rd day of September, 2020.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE